J. S10035/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

TERMINATION OF PARENTAL RIGHTS : IN THE SUPERIOR COURT OF
TO: G.P.M., A MINOR : PENNSYLVANIA
 :
APPEAL OF: C.K., MOTHER : No. 1853 MDA 2019

Appeal from the Decree Entered October 15, 2019,
in the Court of Common Pleas of York County
Orphans' Court Division at No. 2019-0100a

BEFORE: PANELLA, P.J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED MARCH 26, 2020**

C.K. ("Mother") appeals from the October 15, 2019 decree entered in the Court of Common Pleas of York County, Orphans' Court Division, involuntarily terminating her parental rights to her dependent child, G.P.M., male child, born in August 2014 ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b).[1]  After careful review, we affirm.

The record reflects that on September 18, 2019, the York County Office of Children, Youth & Families (the "Agency"), the Child's guardian *ad litem*, Mother's counsel, and the Child's counsel entered into a joint stipulation and stipulated to the following, in relevant part:

> An Application for Emergency Protective Custody was
> filed by the Agency on June 11, 2018.  In the

---

[1] We note that the record reflects, in the same decree, the orphans' court terminated the parental rights of the Child's natural father, M.P.M. ("Father"). Father did not appeal the termination decree.

[application], it was alleged that the Agency has been involved with the [C]hild since September of 2014 due to concerns regarding the Mother's mental health. On or about June 10, 2018, the Agency received a referral in regard to the [C]hild due to the Mother reporting him as missing. The paternal grandparents have rights of partial custody every other weekend from Friday at 4:30 p.m. until Sunday at 6:00 p.m. The paternal grandparents were exercising their rights of custody during the weekend commencing on June 8, 2018. The Mother had contacted the York City Police Department to report the [C]hild missing sometime between Saturday, June 9, 2018, and Sunday, June 10, 2018. The Mother insisted that the [C]hild was with her, sitting on the porch stoop in the middle of the night, and disappeared. The York City Police and canine units searched for the [C]hild; however, it was later discovered that the [C]hild was with the paternal grandparents for the scheduled visitation. The Mother continued to insist that the [C]hild had been with her and became very confused as to time and place. At one point in time[,] the Mother told the Agency representative that she did not know it was Sunday until the police officer told her. It was alleged that the Mother has a history of mental health issues and substance abuse. The Agency had concerns for the Mother's mental health and the safety of the [C]hild should he be returned to her custody. The paternal grandparents were willing to be a resource for the [C]hild. The Agency completed an emergency caregiver investigation as to the paternal grandparents and they were approved. . . .

In an Order for Emergency Protective Custody dated June 11, 2018, sufficient evidence was presented to prove that continuation or return of the [C]hild to the home of Mother and Father was not in the best interest of the [C]hild. Legal and physical custody of the [C]hild were transferred to the Agency. The [C]hild was to be placed in relative care.

In a Shelter Care Order dated June 12, 2018, sufficient evidence was presented to prove that continuation or return of the [C]hild to the home of

Mother and Father was not in the best interest of the [C]hild. Legal and physical custody of the [C]hild were awarded to the Agency. The [C]hild was to remain in foster care with an emergency caregiver.

A Dependency Petition was filed by the Agency on June 14, 2018. The allegations contained in the Dependency Petition were consistent with the allegations raised in the Application for Emergency Protective Custody with the following averments[:] At the Shelter Care Hearing on June 12, 2018, the Mother arrived late, close to when the proceeding was concluding. . . . It was alleged that at the Hearing, the Mother had trouble speaking and was slurring her words and appeared to be lethargic. The Mother explained that she was tired and agreed to be drug tested after the Hearing and an appointment was made at Averhealth; however, the Mother failed to appear for the appointment. The Agency caseworker observed the Mother's prescription and counted the amount of pills which was less than the amount that should be present if Mother were taking the pills as prescribed.

On July 13, 2018, the [C]hild was adjudicated dependent and legal and physical custody were awarded to the Agency. The [C]hild was to be placed in kinship care. The goal initially established was return to parent or guardian. In the Order for Adjudication and Disposition, the [orphans' c]ourt made the following findings of fact[:] The Agency had been involved with the [C]hild since September of 2014 due to Mother's mental health. By Order dated October 17, 2014, temporary legal and physical custody of the [C]hild were awarded to the Agency upon discharge from the hospital. By Order dated November 6, 2014, the [C]hild was adjudicated dependent and legal and physical custody were returned to his Mother. In an Order dated October 2, 2015, juvenile court jurisdiction was terminated. In November of 2017, a Motion to Suspend Mother's Rights of Custody and Visitation was filed due to Mother's mental health and concerns regarding the [C]hild's safety. Subsequently, the Motion was

> vacated and custody was returned to the Mother. On or about June 10, 2018, the Agency received a referral in regard to the [C]hild due to Mother reporting the [C]hild missing[, as detailed above]. . . . On June 28, 2018, the Dependency Hearing was continued at the request of Mother's counsel. . . .
>
> In a Permanency Review Order dated November 27, 2018, the [orphans' c]ourt . . . [found, among other things, that t]here had been moderate compliance with the Permanency Plan by the Mother [and] . . . . Mother had made moderate progress toward alleviating the circumstances which necessitated the original placement . . . .
>
> In a Permanency Review Order dated April 30, 2019, the [orphans' c]ourt . . . [found, among other things, that t]here had been no compliance with the Permanency Plan by the Mother [and] . . . . Mother had made no progress toward alleviating the circumstances which necessitated the original placement[.] . . . A new placement goal of adoption was established.

Stipulation of counsel, 9/18/19 at 4-8 ¶17-¶23 (paragraph numbers omitted; stipulations regarding Father omitted).

On June 11, 2019, the Agency filed a petition for involuntary termination of Mother's parental rights under Sections 2511(a)(1), (2), (5), (8), and (b). The orphans' court held a termination hearing on September 24, 2019. On October 15, 2019, the orphans' court entered a decree terminating Mother's parental rights to the Child. Mother filed a timely notice of appeal, together with a concise statement of errors complained of on appeal in compliance with Pa.R.A.P. 1925(a)(2)(i). Thereafter, the orphans' court filed a "statement"

pursuant to Rule 1925(a)(2)(ii) that incorporated the reasons for termination that it set forth in its October 15, 2019 termination order.[2]

Mother raises the following issue for our review:

> Did the [orphans' c]ourt abuse its discretion and/or err as a matter of law in terminating Mother's parental rights when the Agency failed to meet its burden that termination of parental rights was warranted under [Sections] 2511(a)(1), (2), (5), (8) and [] (b) and said decision of the [orphans' c]ourt was not supported by sufficient evidence?

Mother's brief at 4.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** The trial court's decision, however, should not be reversed merely because the record would support a different result. ***Id.*** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***See In re R.J.T.***, 9 A.3d [1179, 1190 (Pa. 2010)].

---

[2] We note that the October 15, 2019 termination order sets forth the orphans' court's findings of fact and conclusions of law with respect to its entry of the October 15, 2019 termination decree.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear

conviction, without hesitance, of the truth of the precise facts in issue."
*In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting
*Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998).

In this case, the trial court terminated Mother's parental rights pursuant
to Sections 2511(a)(1), (2), (5), and (8), as well as (b). We have long held
that, in order to affirm a termination of parental rights, we need only agree
with the orphans' court as to any one subsection of Section 2511(a), as well
as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004)
(*en banc*). Here, we analyze the termination decree pursuant to
Subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be

terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long

period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." ***In re A.L.D.***, 797 A.2d at 340 (internal quotation marks and citations omitted).

Here, in terminating Mother's parental rights, the orphans' court found that Mother had made no progress towards alleviating the circumstances that necessitated the removal of the Child from Mother's care and that there had been no compliance with the permanency plan by Mother. (Order of court, 10/15/19 at 4.) The orphans' court further found that

> [t]he primary concern for Mother was her financial stability, stable housing, and her mental health needs. The [orphans' c]ourt finds that Mother has not appropriately addressed her mental health needs. The [orphans' c]ourt further finds that Mother has failed to document that she has achieved safe and appropriate housing to achieve reunification. The testimony before the [orphans' c]ourt establishes that Mother is currently homeless. As part of her testimony, she indicated that she is identifying her mother's residence as her current residence but acknowledged that she is not staying there overnight every evening. The [orphans' c]ourt further finds that the testimony established that Mother has not appropriately documented lawful sources of income that would be adequate to financially support the [C]hild if reunification was achieved.

Order of court, 10/15/19 at 5.

> Three different teams were put in place to work with Mother, one through Pressley Ridge Family [E]ngagement, one through Pressley Ridge Intensive Family Services, and one through Commonwealth Clinical Group. All three teams closed. The intensive family services team closed unsuccessfuly due to Mother's noncompliance, as did the Commonwealth

Clinical Group, which was to address Mother's mental health needs.

*Id.* at 7-8.

The [orphans' c]ourt also notes for the record that Mother did attend the [termination] hearing; that she did step out of the hearing on several occasions, and that she refused to be drug tested prior to the hearing and again during the hearing when requested to be so tested directly by the [orphans' c]ourt.

*Id.* at 9.

We conclude that the record supports the trial court's factual findings and that the trial court did not abuse its discretion in terminating Mother's parental rights under Section 2511(a)(2). The record demonstrates that the conditions that existed upon removal establish repeated and continued incapacity, abuse, neglect, or refusal of Mother that caused Child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being. The record also supports the trial court's conclusion that Mother continued to lack capacity to parent Child.

We now turn to whether termination was proper under Section 2511(b). As to that section, our supreme court has stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare"

> requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

***In re T.S.M.***, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219, quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Our supreme court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. The court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

In determining that termination of Mother's parental rights favored Child's needs and welfare, the trial court concluded that

> there will be no long-term, negative impact on the [C]hild by [] involuntarily terminat[ing Mother's] parental rights. The [orphans' c]ourt in fact believes it is in the [C]hild's best interests and that his needs and welfare will be best served by the termination of Mother['s] . . . parental rights.
>
> The Agency's caseworker testified that the [sic] she last spoke with the [C]hild on the Wednesday prior to the [termination] hearing regarding the [C]hild's placement in foster care and that the [C]hild stated to her that he wanted to remain with his foster parents and not return to Mother . . . .

Order of court, 10/15/19 at 8-9.

The record further reflects that the Child's caseworker testified that the Child has a "minimal" bond with Mother that the caseworker described as "unhealthy." (Notes of testimony, 9/24/19 at 72.) The caseworker also testified that on July 26, 2019 and August 2, 2019, the Child refused to attend visits with Mother. (*Id.* at 72-73.) The caseworker further stated that termination of Mother's parental rights would be in Child's best interest because the Child is "thriving in his foster home" and is "bonded with his foster family." (*Id.* at 82.)

The record further reflects that the Child's guardian *ad litem* stated at the termination hearing that he is "one hundred percent in agreement with the Agency's request to terminate rights because that is what the [C]hild needs. The [C]hild needs permanency." (*Id.* at 132.) Additionally, the Child's counsel stated that he

> did meet with [the Child], discussed with him as best [as counsel] could given his age, his situation. He is comfortable and happy where he is. He says he enjoys it there.
>
> . . . . [H]e did seem very comfortable, very happy. He did call foster mother Mom while [counsel] was there . . . . [Counsel] think[s the child] enjoys being happy and safe there.

*Id.*

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the orphans' court appropriately terminated Mother's parental rights under Sections 2511(a)(2) and (b).

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/26/2020